# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

KAREN M. HUFFAKER,        )
                                   )
       Plaintiff,       )
                                   )
v.                        )     No. 3:05-CV-527
                                 )     (Phillips/Guyton)
THE METROPOLITAN LIFE    )
INSURANCE COMPANY, et al.,   )
                                 )
       Defendants.   )

## MEMORANDUM & ORDER

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of

this Court, and by Order [Docs. 13, 21] of the Honorable Thomas W. Phillips, United States District

Judge, for disposition of the Plaintiff's Motion to Adjust Schedule to Permit Discovery as Permitted

Under ERISA Benefits Case-Law [Doc. 8] and the Plaintiff's Motion to Stay Deadlines [Doc. 20].

## I.  Motion to Adjust Schedule to Permit Discovery

The plaintiff Karen Huffaker claims that the defendants improperly denied her claim

for long term disability benefits under an ERISA benefits plan and that she is entitled to payment

of plan benefits under 29 U.S.C. § 1132(a)(1)(B).  [Doc. 1].  In connection with her claim, the

plaintiff now requests that the Scheduling Order [Doc. 7] be adjusted so as to allow her time to

conduct discovery in this case.  Specifically, the plaintiff seeks information about the physicians

who evaluated her claim and on whom the defendant The Metropolitan Life Insurance Company

("MetLife") relied in denying benefits, including: (1) the relationship between MetLife and the

physicians, including whether the physicians are employees of MetLife, employees of another company hired by MetLife to perform file reviews, or independent contractors; (2) the amount of compensation the physicians received from MetLife, both for their work on this claim, and annually in the years immediately preceding the plaintiff's claim; (3) the number of reviews each physician performed on MetLife claims in the years immediately preceding the plaintiff's claim, whether those reviews were procured directly by MetLife or through another company contracted to MetLife; and (4) what documents the physicians were provided to review, and what questions they were directed to answer.

The plaintiff argues that each of these questions is relevant to the issues of bias and due process. The plaintiff further argues that under recent Sixth Circuit decisions, the proposed discovery is proper and should be allowed, even without any initial threshold showing of bias or of a lack of procedural due process. Finally, the plaintiff contends that even if such an initial threshold showing was required to justify discovery, she has satisfied that burden in this case. [Doc. 9].

The defendants oppose the plaintiff's motion, arguing that a mere allegation of bias is insufficient to permit discovery in an ERISA benefits action and that the plaintiff has failed to make an initial evidentiary showing of bias. Accordingly, they argue, the plaintiff's motion should be denied. [Doc. 12].

As a general rule, parties in a civil action "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

In an ERISA action, however, these usual discovery parameters do not apply. In such cases, the Court's review of a denial of benefits under a qualified employee welfare benefits plan is ordinarily limited to consideration of the administrative record upon which the denial was based. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th Cir. 1998); Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990). The Sixth Circuit, however, has recognized that, in some limited instances, consideration of evidence outside the administrative record may be appropriate:

> The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

Wilkins, 150 F.3d at 619. This holding "implies a claimant must identify the specific procedural challenge(s) about which he complains and that discovery must then be limited to those procedural challenges." Bennett v. Unum Life Ins. Co., 321 F. Supp. 2d 925, 932 (E.D. Tenn. 2004).

In Bennett, the plaintiff sought information from the defendant outside the administrative record in an effort to show bias, conflicts of interest, and denial of due process on the part of the administrator. Id. at 928. Citing Wilkins and several district court opinions within the Sixth Circuit, Magistrate Judge Carter concluded that "consideration of evidence outside the record of conflicts of interest, bias, and denial of due process is appropriate in certain circumstances." Id. at 931. To determine under which circumstances such evidence would be appropriate, the Court considered the competing interests of the parties:

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal.

3

At the same time, ERISA was enacted to promote the interests of employees and their beneficiaries in employment benefit plans and to protect their contractually defined benefits. In this regard, courts have the duty to review decisions denying ERISA benefits for conflicts of interest, bias, and denial of due process, *i.e.* procedural irregularities, on the part of the plan administrator or fiduciary . . . A rule requiring courts to ignore evidence of serious procedural irregularities solely because they are not apparent on the face of the record seems extreme and would unduly tie the courts' hands in conducting its duties under ERISA.

Id. at 931-32 (citations and quotation marks omitted). In light of Sixth Circuit precedent and the competing interests of the parties, Judge Carter concluded that a "middle of the road" approach was appropriate with respect to discovery in ERISA cases, and therefore held as follows:

[W]here a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he has a reasonable basis to make such procedural challenges, then good cause exists to permit the plaintiff to conduct appropriate discovery.

Id. at 933. The Court went on to determine that Bennett had made a sufficient threshold showing that the administrator's decision to terminate her disability benefits may have been a result of bias and a conflict of interest. Accordingly, the Court permitted the plaintiff to engage in discovery as to the specifically identified procedural challenges. Id. at 936.

The plaintiff contends that the initial threshold showing discussed in Bennett is no longer required in the Sixth Circuit. In support of this contention, the plaintiff cites two recent Sixth Circuit opinions, Calvert v. Firstar Finance, Inc., 409 F.3d 286 (6th Cir. 2005), and Kalish v. Liberty Mutual Life Assurance Co., 419 F.3d 501 (6th Cir. 2005). In Calvert, the plaintiff argued on appeal that the Court should apply a less deferential standard of review on the grounds that the insurer, as both the decisionmaker and payer of benefits, had an inherent conflict of interest. Calvert, 409 F.3d

4

at 292. The Court held that application of the arbitrary and capricious standard would adequately take into account this conflict of interest. Id. at 293. The Court noted in a footnote, however, as follows:

> The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that discovery is never permissible in an ERISA action premised on a review of the administrative record, an exception to that rule exists where a plaintiff seeks to pursue a decision-maker's bias.

Id. at 293 n.2. In Kalish, the plaintiff sought to discredit the opinions of the medical reviewer on the grounds of his inherent bias towards the insurer. 419 F.3d at 507. The Court rejected the plaintiff's argument, finding that the plaintiff had offered only "conclusory allegations of bias" and had failed to offer any statistical evidence that the reviewing doctor had consistently opined that claimants were not disabled. Id. at 508. In so holding, the Court cited its remark in Calvert that the plaintiff should have explored his allegations of bias through discovery. Id.

The plaintiff argues that in neither of these cases did the Sixth Circuit mention any requirement of an initial showing of bias before permitting discovery, and therefore, such requirement is no longer applicable. The defendants contend that the Sixth Circuit's comments regarding discovery in both of these cases are merely dicta and that the rationale of Bennett is still controlling. The plaintiff counters that Kalish and Calvert were decided after Bennett, and therefore, the Court's comments reflect the "current position" of the Sixth Circuit on the issue of discovery in ERISA actions.

The Sixth Circuit recently addressed the requirement of an initial showing in Putney v. Medical Mutual of Ohio, 111 Fed. Appx. 803 (6th Cir. Sep. 10, 2004). In that case, the plaintiff

5

argued that the district court erred in denying him discovery on his procedural challenge to the denial of his disability benefits claim. Id. at 806. The Court rejected the plaintiff's argument, holding as follows:

> Putney presented virtually no evidence of procedural violations. First, the district court correctly held that Putney presented absolutely no evidence of bias. **The record does not reflect that he provided any facts to support a claim that discovery might lead to such evidence**, and he has not revealed any such facts in the joint appendix. Putney's mere allegation of bias is not sufficient to permit discovery under Wilkins' exception. Second, Putney's claim that Medical Mutual refused to permit him to submit information during his administrative appeal is also a "mere allegation," insufficient to require discovery. Putney's brief before this court points to no evidence supporting his allegation that Medical Mutual did not permit him to develop the administrative record.

Id. at 807 (emphasis added).

Citing Putney, this Court, in a decision by Magistrate Judge C. Clifford Shirley, Jr., recently rejected a plaintiff's request to conduct discovery in an ERISA action, finding that the cited statements in Kalish and Calvert are dicta and that the plaintiff is still required to make the initial showing described in Bennett in order to conduct discovery in an ERISA case. See Bradford v. Metropolitan Life Ins. Co., No. 3:05-cv-240, 2006 WL 1006578 (E.D. Tenn. April 14, 2006) (slip op.). The Middle District of Tennessee, however, citing Kalish and Calvert, recently allowed "limited discovery" in an ERISA action based upon the plaintiff's allegation of bias, and without an initial factual showing, noting that "[o]bviously, absent some discovery, it would be difficult for most plaintiffs to do anything more than allege bias since the information concerning the potential bias is in the hands of the employer and/or the plan administrator." Platt v. Walgreen Income Protection Plan For Store Managers, 3:05-cv-162, slip op. at 4 (M.D. Tenn. 2005).

The Court agrees with the reasoning of both <u>Putney</u> and <u>Bradford</u> that the statements in <u>Kalish</u> and <u>Calvert</u> are dicta and are therefore not dispositive of the issue presently before the Court. It does not appear that the plaintiff in either <u>Kalish</u> or <u>Calvert</u> sought or requested discovery. Accordingly, neither opinion addresses whether an initial showing is required before discovery may be conducted. These cases, therefore, are simply not determinative of the issue before the Court.

Upon carefully considering the relevant Sixth Circuit authority, the Court concludes that the initial threshold showing, as stated in <u>Bennett</u>, is still applicable in this Circuit. Thus, in order to engage in discovery in this case, the plaintiff must first identify specific procedural challenges concerning the decision to deny or terminate ERISA benefits. Second, the plaintiff must make an initial showing to the Court that she has a reasonable basis to make such procedural challenges. Only then will the Court find good cause to permit the plaintiff to conduct appropriate discovery. <u>See</u> <u>Bennett</u>, 321 F. Supp. 2d at 933.

Having determined the appropriate standard to be applied, the Court will now address whether the plaintiff has demonstrated good cause to engage in discovery with respect to the alleged bias on the part of the reviewing physicians. The plaintiff asserts that she has satisfied this burden by showing that MetLife has "a habit of using the same doctors over and over again." Specifically, the plaintiff cites to information produced by MetLife in another case, <u>Winkler v. Metropolitan Life Ins. Co.</u>,[1] which reveals that in 2003, MetLife consulted with a Dr. Greenhood 1,536 times on disability claims, amounting to 80% of Dr. Greenhood's workload; with a Dr. Kilburn 414 times, accounting for 33% of his workload; and with a Dr. Shallcross 287 times, accounting for 40% of his workload. The plaintiff argues that MetLife's history of repeatedly using the same physicians to

---

[1]It is unclear from the record where the <u>Winkler</u> case was litigated.

7

review files "cast[s] doubt as to how 'independent' those independent experts truly are" and that the fact that MetLife has previously answered questions regarding the number of reviews performed by its hired experts demonstrates that this is information within MetLife's reach.

The Court finds that the plaintiff has failed to make an adequate showing to justify further discovery in this case. There is no evidence before the Court to suggest that the three physicians referenced in Winkler were involved in the review of Huffaker's claim. The mere fact that MetLife may have used three other physicians numerous times in other cases simply does not demonstrate good cause to engage in discovery with respect to the physicians who reviewed the plaintiff's claim.

For the foregoing reasons, Plaintiff's Motion to Adjust Schedule to Permit Discovery as Permitted Under ERISA Benefits Case-Law [Doc. 8] is **DENIED**.


## II. Motion to Stay Deadlines

The plaintiff moves for all pending deadlines in this case to be stayed until the Court has ruled on her Motion to Adjust the Schedule to Permit Discovery. [Doc. 20]. For grounds, the plaintiff states that, pursuant to the Scheduling Order, the plaintiff's motion for judgment is to be filed on or before June 26, 2006, and that the defendant's "cross-motion/response" is to be filed thirty (30) days thereafter. The defendant, however, filed a motion for judgment as a matter of law on May 30, 2006, thereby requiring a response from the plaintiff by June 19, 2006, one week before the plaintiff's motion is due. Accordingly, the plaintiff requests that all deadlines for briefing be stayed until twenty (20) days after the Court has ruled on the Motion to Adjust Schedule to Permit Discovery.

The defendants oppose the plaintiff's motion, arguing that the plaintiff has not shown a sufficient basis to allow discovery in this action. The defendants further argue that their admittedly premature dispositive motion does not require a stay, as the plaintiff's dispositive motion is still due on June 26, 2006, and that the defendants' earlier filing [Doc. 18] "simply may be disregarded." [Doc. 22].

In light of the defendants' response, the plaintiff filed a Notice Regarding Plaintiff's Response to Defendants' Motion for Judgment on the Record [Doc. 23], indicating that the plaintiff will consider the defendants' motion for judgment withdrawn; that the plaintiff will file her own dispositive motion within the timeframe provided by the Court's original scheduling order; and that the plaintiff will respond to the defendants' motion for judgment when it is timely filed in accordance with the Court's Scheduling Order.

In light of the plaintiff's Notice [Doc. 23], the Court finds the plaintiff's Motion for Stay Deadlines [Doc. 20] to be moot, and it is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:


_____s/ H. Bruce Guyton_____
United States Magistrate Judge